J. C. JOHNSON, et al. v. C. A. ROBINSON, et al.

Middle Section. April 12, 1928.

458

Roberts & Roberts, of Nashville, for appellant.
W. B. Williams and W. R. Chambers, of Lebanon, for appellees.

FAW, P. J. The bill in this case was filed on January 26, 1925, by two complainants claiming separate and independent rights, but which had a common root or origin, and were, therefore, properly joined in one suit. There are three defendants to the bill, viz: C. A. Robinson, J. R. Smith and Andrew Dunn, all of whom are citizens and residents of Wilson county, Tennessee.

One of the complainants, J. C. Johnson, sues as the owner and holder of a note for $753.97, dated October 8, 1920, and due four years after its date, with interest from its date at six per cent per annum, payable annually. Said note was executed by defendant C. A. Robinson, payable to Mrs. Jane Johnson, and recites on its face that it is "third deferred payment on tract of land 13th Civil District, Wilson county, Tennessee, . . . and vendor's lien retained to secure this note and interest."

Complainant J. C. Johnson was the son and the administrator de bonis non of Mrs. Jane Johnson, the payee of said note, and, as such administrator, he transferred said note to himself, and, so far as appears, his title thereto is not questioned.

The other complainant is the Bank of Alexandria, a Tennessee banking corporation with its situs in DeKalb county, Tennessee, suing in its capacity as guardian of Mary Jane Woods, a minor. Complainant guardian sues as the owner and holder of two notes dated October 8, 1920, executed by defendant C. A. Robinson, payable to Mrs. Jane Johnson, and transferred by endorsement of her administrator, J. C. Johnson, to complainant bank, as guardian as aforesaid, on December 17, 1921. One of said two notes is for $363.-61, less credits aggregating $200 endorsed thereon, and was due two years after its date. The other of the two notes held by complainant guardian is for $653.01, and was due three years after its date. Each of said two notes bears interest from its date at six per cent per annum, payable annually, and contains substantially the same recitals that it is a deferred payment on a tract of land, etc., as the note held by complainant J. C. Johnson, before described, except

that, the note for $363.61 recites that it is "first deferred payment" and the note for $651.01 recites that it is "second deferred payment." Each of the three notes sued on also contains an agreement by the maker to pay ten per cent attorneys' fees in the event the note is not paid at maturity and suit is brought.

Upon averments in their bill, which will be stated later, the complainants prayed for judgment against the three defendants named for the amount of said notes, with interest and attorneys' fees; that said judgment be declared a lien on a tract of land described in the bill, and said land sold on a credit of not less than six months and not more than twenty-four months and in bar of the equity of redemption, and the complainants pray for general relief.

The defendants answered the bill, proof was taken, and the cause was finally heard by the Chancellor upon the pleadings and proof, and judgment was rendered against defendant C. A. Robinson for the amount of the three notes, with interest and attorneys' fees; but the Chancellor declined to declare the judgment a lien on the land described in the bill, and dismissed the bill in that respect, and also dismissed the bill as against defendants J. R. Smith and Andrew Dunn. The costs incident to making J. R. Smith and Andrew Dunn parties defendant were adjudged against the complainants, and the remainder of the costs were adjudged against the defendant C. A. Robinson.

Defendant C. A. Robinson did not appeal, but, so far as appears, acquiesced in the decree.

The complainants prayed a special appeal from that part of the decree adverse to them. That part of the decree relating to the appeal of the complainants is in these words: "To all that part of the foregoing decree as dismisses the bill as against defendants J. R. Smith and Andrew Dunn and denies a lien on the lands, involved herein and taxes complainants with a portion of the costs of this cause, complainants except and pray an appeal therefrom, to the Court of Appeals at Nashville, Tennessee, and for satisfactory reasons appearing to the court they are allowed thirty days from this date in which to perfect their appeal by filing oath or bond."

The foregoing decree was entered on June 7, 1927, and on July 5, 1927, complainant J. C. Johnson filed an appeal bond, with surety, for the prosecution of his appeal from the decree rendered against him; but it does not appear that complainant Bank of Alexandria, or its ward, Mary Jane Woods (who attained her majority pending the suit in the chancery court), filed an appeal bond or an oath in lieu thereof. This operated as an abandonment of the appeal by complainant bank, as guardian, and its ward. England v. Young 155 Tenn., 506, 299 S. W., 14.

It will be observed that the decree of the chancery court does not, in express terms, grant a decree to the complainants. In the case of Teasdale & Co. v. Manchester Produce Co., 104 Tenn., 267, 56 S. W., 853, it was held that an appeal, to be effective, must not only be prayed but granted, and the minute entry must so show.

But in the later case of Bank v. Johnston, 105 Tenn., 521, 59 S. W., 131, it appeared that the unsuccessful defendant prayed an appeal, and (although the entry did not recite that the appeal was granted) the Chancellor allowed the appellant thirty days in which to make and file an appeal bond. In that case the Supreme Court held that the allowance of time by the Chancellor for the defendant to give bond was equivalent to a recital that the appeal was granted, for otherwise the Chancellor would certainly not have given time to make the appeal bond.

Following the last cited case, we hold, in the instant case, that the recital in the decree that complainants were allowed thirty days from the date of the decree in which to perfect their appeal by filing oath or bond was equivalent to a recital that the appeal was granted. However, as before stated, the appeal was perfected by complainant J. C. Johnson alone, and his appeal cannot enure to the benefit of his cocomplainant, for the reason that the two complainants had separate and independent causes of action which, under the liberal rules of chancery practice, were properly joined in one bill, for the reason that they had their origin in the same transactions and, upon controverted matters, the same proof was applicable. Gibson's Suits in Chancery, 1st Ed., sec. 180.

In order that the questions raised by appellant's assignments of error may be understood, it will be well to state certain facts disclosed by the record, as follows:

The tract of eighty-six and one-fourth acres of land in the 13th Civil District of Wilson county, on which the complainants sought, by their bill in this case, to fix a lien, was conveyed by R. M. Johnson (the parents of complainant J. C. Johnson) to defendant C. A. Robinson on December 28, 1910, by deed duly executed and acknowledged by the grantors on that date. The recitals of the deed relating to the consideration for the conveyance of the land and the retention of a lien to secure same are in these words:

"For the consideration of $3450 to be paid as follows: C. A. Robinson executes his six promissory notes to R. M. Robinson, of even date herewith, viz: One for $1000 due January 1, 1911, and four for $500 each and due respectively, January 1/12, January 1/13, January 1/14 and January 1/15, all four bearing three per cent interest from date until maturity and after maturity six per cent and one note for $450 bearing three per cent from date until maturity and six per cent after maturity and a

lien is herein retained as is also in all of said notes, until they are all paid."

This deed was delivered to the grantee, but was never registered. It was produced and filed in this cause by defendant Robinson.

R. M. Johnson died testate in the year of 1917, and by his last will he bequeathed all of his personal property, including "notes," to his wife, Jane Johnson, and a subsequent item of the will (the sixth item) is in these words:

"I further direct that if there is any personal property belonging to my wife at her death which I formerly bequeathed to her it shall be equally divided between my son John C. Johnson and my granddaughter Mary Jane Johnson."

Mary Jane Woods, the ward of the Bank of Alexandria (complainant below) is the daughter of complainant J. C. Johnson, and is the same person described as Mary Jane Johnson in the aforesaid will of R. M. Johnson.

Defendant Robinson paid a part (approximately one-half) of the aforesaid purchase money notes, and for the remainder he executed and delivered to Mrs. Jane Johnson on October 8, 1920, the three notes sued upon in this case as heretofore described, and such of the original purchase money notes executed by defendant Robinson to R. M. Johnson as were then in the hands of Mrs. Jane Johnson were at that time canceled and surrendered to defendant Robinson.

Mrs. Jane Johnson died early in the year of 1921, and the said three notes of October 8, 1920, went into the hands of her administrator, and were by him subsequently transferred to the complainants—one to J. C. Johnson and two to the Bank of Alexandria, guardian—as before stated.

On November 5, 1922, defendant C. A. Robinson (his wife joining) executed and acknowledged a deed to J. R. Smith, trustee, reciting therein a consideration of $4313 "cash paid in other real estate," the receipt of which was acknowledged. This deed was delivered to defendant Smith, and was duly registered in the Register's office of Wilson county, but the entire description of the land conveyed, as contained in said deed, is in these words:

"The following described piece or parcel of land, being situated in the 13th Civil District of Wilson county, State of Tennessee, and bounded and described as follows." Obviously, the foregoing description did not sufficiently identify any particular tract of land, and on December 17, 1924, defendant Robinson and his wife executed another deed to J. R. Smith, trustee, reciting therein the omission "by a mistake" of the description of the land in the former deed, and that the grantors were executing the second deed for the consideration expressed in the former deed, and "for the pur-

pose only of correcting the mistake" in the former deed. The latter deed contained a sufficient description of the land conveyed, and was duly acknowledged for registration and delivered to defendant Smith, and was registered on the day following its execution.

The conveyance of the land in question by Robinson to Smith, for the consideration of $4313 "paid in other real estate," was made by Robinson and accepted by Smith as a payment pro tanto of the consideration for a farm conveyed at that time by Smith to Robinson at the price of $14,000.

It is stipulated in the record that defendant J. R. Smith sold and conveyed the land in question by general warranty deed to the defendant Andrew Dunn, after the date of the deed to himself.

It is alleged in the bill (as amended by leave of the Chancellor before the hearing) that on November 5, 1922, defendant Robinson and wife sold and conveyed said land to defendant J. R. Smith, trustee, on which date there existed a valid lien on said land to secure the payment of said original purchase price under the sale of December 28, 1910, which lien had never been released of record or otherwise, and when said J. R. Smith took said deed of November 25, 1922, he took title to said lands encumbered by said valid liens, which have never been extinguished but now remain in full force and effect.

It is also alleged in the bill that at the time defendant Smith took title to the land in question he knew that complainants held the notes sued on, and that the land had not been paid for, and he assumed and agreed to pay these notes: That it was "a part of the consideration and contract between Robinson and Smith that he, said Smith, pay these notes," and that defendant Smith had promised several times to pay them, but has failed and refuses to do so.

It is further alleged in the bill that in the Fall of 1924, defendant Smith sold and conveyed said tract of land to defendant Dunn, he, Dunn, knowing at the time that complainants held these notes, and that the land had not been paid for, and that, therefore, defendant Dunn is not an innocent purchaser of same, "besides he has not paid anything on said land or at least all the purchase price, to his co-defendant J. R. Smith."

Defendant C. A. Robinson filed a separate answer to the bill, but, as he has not appealed from the personal judgment against him, it is unnecessary to state the contents of his answer, further than to say that he averred that the last of the series of the original notes executed by him to R. M. Johnson for the purchase price of the land in question matured on January 1, 1915, and he pleaded the statute of limitations of ten years as a bar to the enforcement of a vendor's lien on the land—this suit not having been brought until after the lapse of more than ten years from the maturity of the last note of the series.

Defendants Smith and Dunn filed a joint and separate answer, in which defendant Smith denied that he knew there was a lien on the land when he purchased it from defendant Robinson, and he averred that he was told by defendant Robinson at that time that there were no liens of any kind on said land.

We have heretofore stated, in substance, the decree rendered by the Chancellor.

There are four assignments of error which, as a whole, are of considerable length, but, when they are analyzed, it is seen that they depend, for the most part, upon the effect of the Act of 1885, chapter 9, carried into Shannon's Code as section 4464, which provides that:

"Liens on realty retained in favor of vendors on the face of a deed, also mortgages, deeds of trust, and assignments of realty executed to secure debts, shall be barred, and the liens discharged, unless suits to enforce the same be brought within ten years from the maturity of the debt."

We may assume for the purposes of this opinion, that the three notes executed by defendant Robinson to Mrs. Jane Johnson on October 8, 1920, were mere renewals and were not intended to, and did not, extinguish the unpaid part of the original indebtedness of defendant Robinson for the purchase of the land in question, and that it was the understanding of the parties at the time that the renewal of the notes would preserve and extend the vendor's lien retained in the deed of R. M. Johnson and wife to Robinson. This is denied by defendant Robinson, but we think the circumstances disclosed by the proof, when taken in connection with the recitals of the notes, discredit his testimony on this point. Nevertheless the assumption that the renewal of the notes would extend the vendor's lien was a mistake of law which will not now avail complainant Johnson.

Under the aforesaid Act of 1885, chapter 9, a vendor's lien on realty is barred at the expiration of ten years from the maturity of the original debt secured, although the debt may have been kept alive and the time of its payment postponed by the renewals of the notes within ten years next before the institution of the suit. McElwee v. McElwee, 97 Tenn., 649, 653, 37 S. W., 560.

In the McElwee case, supra, the question arose between a mortgagee and a subvendee of the mortgagor; but in Runnells v. Jacobs, 100 Tenn., 397, 45 S. W., 980, it was held that a trust deed cannot be enforced, even as against the grantor, more than ten years after the maturity of the original note secured thereby, although the note was kept alive by renewals or promises, and the indulgence and delay in the enforcement of the trust deed granted at the request of the grantor.

And this rule has been announced and applied in subsequent cases. Bank v. Smith, 107 Tenn., 476, 483, 64 S. W., 756; Alexander v. Muse, 112 Tenn., 233, 79 S. W., 117.

In the case of Alexander v. Muse, supra, it was held that a mortgage on land is not renewed or extended by a renewal note for the debt secured, although the renewal note recites that "this is the renewal of a former note for land which is secured by mortgage which is still in force."

It is said that defendants Smith and Dunn did not plead the statute of limitations provided by the Act of 1885, chapter 9, and therefore cannot rely on it as a bar to the enforcement of the vendor's lien claimed. Defendant Robinson pleaded the limitation of ten years; but it was not necessary that either of the defendants plead that statute in order to obtain its benefits. "The necessity of pleading the statute of limitations applies only to cases where the remedy alone is taken away, and in which the defense is by way of confession and avoidance, and does not apply where the right and title to the thing is extinguished and gone and the defense is by denial of that right." 17 R. C. L., p. 989; Gibson's Suits in Chancery, 1st Ed., sec. 336; Bomar v. Hagler, 7 Lea, 85, 89.

The Act of 1885, chapter 9, not only bars the remedy, but extinguishes the right. It was expressly so held by the Court of Civil Appeals in Handly v. White, 8 Hig., 624, 628, and certiorari was denied by the Supreme Court.

And in Bank v. Smith, supra, at page 483 the court said:

"The lien of the first, or Ellett deed of trust, was 'barred' and 'discharged' by the lapse of more than ten years between the maturity of the secured note and the sale by the trustees. Acts 1885, chap. 9, sec. 1; Shan. 4464; McElwee v. McElwee, 97 Tenn., 649; Runnels v. Jacobs, 100 Tenn., 397. Hence that sale and the deed by the trustees passed no title. It matters not that W. A. Collier and wife may have intended the paper executed by them to Mrs. Wheless as a renewal of the Ellett deed of trust, and that she may have so understood it, for no language that could have been employed would have extended the life of that deed of trust, especially as against intermediate lienors, beyond the period of ten years from the maturity of the Ellett note. The statute is plain, positive, and unyielding on this point."

Aside from an assignment complaining of the taxation of costs, the Act of 1885, chapter 9, supra, affords a sufficient answer to all of appellant's assignments of error, save one, viz: that "the court erred in failing and refusing to hold that J. R. Smith promised and agreed to pay off the notes in question as a part of the consideration for this land."

If defendant Smith had accepted a deed for the land in question from defendant Robinson containing a recital that he (Smith) assumed the payment of the notes sued on as a part of the consideration for the conveyance of the land, he would have been bound. Christian v. John, 111 Tenn., 92, 99, 76 S. W., 906. But the deed contains no provisions of that character and no recognition of any liens or encumbrances on the land or of any indebtedness of defendant Robinson, and the undisputed testimony of Smith and Robinson is that Robinson told Smith that he did not owe anything on the land; that he had given notes when he bought it, but had taken up the notes. There was, therefore, no error in the refusal of the court to hold that defendant Smith "promised and agreed to pay off the notes in question as a part of the consideration for this land."

It may be well to say that defendant Smith was chargeable with constructive knowledge of the contents of the deed made by R. M. Johnson and wife to defendant Robinson, for the reason that said deed was one of the muniments in his chain of title; and we have referred to the proof with reference to his lack of actual knowledge of liens on the land at the time he traded for it merely as bearing upon the complainant's contention that he (defendant Smith) "promised and agreed to pay off the notes in question as a part of the consideration for this land."

Through an assignment of error appellant says that "the court erred in taxing the complainants with the costs of this case; same should have been taxed against the defendants Smith and Dunn."

The only cost taxed against complainants below was the cost of making the defendants Smith and Dunn parties to the cause. The remainder of the costs was taxed against defendant Robinson. There was no error in this taxation of costs of which complainant Johnson can properly complain.

It results from what we have said that the assignments of error are all overruled, and the decree of the chancery court, insofar as it is brought up for review by the appeal of J. C. Johnson, is affirmed. The costs of the appeal will be adjudged against the appellant J. C. Johnson and the surety on his appeal bond.

Crownover and DeWitt, JJ., concur.